ItDECUIR, Judge.
Defendants, Reliable Amusement and Bobby Dale Presson, appeal a judgment of the trial court awarding thirteen thousand nine-hundred fifty-five and 37/100 ($13,955.37) dollars of video poker revenue together with legal interest to plaintiff, Louisiana Gaming Corporation, under the terms of a contract between the parties.
FACTS
Louisiana Gaming entered into a contract with Cleve J. Byone d/b/a Southern Star for the exclusive right to place video poker machines in his place of business. Subsequent to this agreement, Byone allowed Reliable to place video poker machines in his place of business. Louisiana Gaming responded by filing suit seeking an injunction to restrain Byone from allowing Reliable or any other third party to place video poker machines in his establishment. The court issued a temporary injunction and set a hearing date for the permanent injunction on November 17, 1992.
On the evening prior to the hearing, Reliable requested that Louisiana Gaming agree to continue the hearing until a later date. After some discussion, the parties, ^through their attorneys, agreed that Louisiana Gaming would agree to a continuance in exchange for Reliable’s agreement to pay Louisiana Gaming all net profits from the video poker machines in Byone’s establishment during the period of October 6, 1992, through the date of trial on the merits should Louisiana Gaming be successful in obtaining a permanent injunction.
Louisiana Gaming sent a letter on November 17, 1992, confirming the agreement, demanding that it be reduced to writing, and defining net profits as gross revenue less the state’s 22½% share and Byone’s 50% share. Reliable never objected to the substance of this letter.
Louisiana Gaming was successful in gaining a permanent injunction and Reliable filed a suspensive appeal. Louisiana Gaming contested the amount of the bond, and the parties ultimately agreed to extend their letter agreement for the duration of the appeal in order to avoid the cost of contesting and defending the amount of the bond. On March 15, 1993, Louisiana Gaming sent a letter confirming that Reliable had agreed to pay Louisiana Gaming the operator’s one-half share of the video poker net revenue generated after October 6,1992, and extending the agreement to cover the pending appeal. This agreement was signed by Reliable through its authorized representative Bobby Dale Presson.
Louisiana Gaming ultimately prevailed on appeal and sought payment from Reliable. Reliable declined to pay claiming that it was entitled to deduct its operating expenses from the amount owed. Louisiana Gaming filed this suit to collect under the contract. The trial judge found for Louisiana Gaming and Reliable lodged this appeal.
DISCUSSION
On appeal, Reliable contends that the trial court erred in failing to recognize Uthat the parties’ entire agreement was contained in the March 15,1993 letter and that the agreement to pay net revenue allowed for the deduction of reasonable and necessary expenses.
Reliable attempts to style the entire agreement as a compromise of a suit such that only the March 15, 1993 writing is a valid agreement. Louisiana Civil Code Article 3071 provides in pertinent part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which everyone of them prefers to the hope of gaining, balanced by the danger of losing.
(emphasis added)
Clearly, in this case, the agreement between the parties did not prevent or end Louisiana *689 Gaming’s lawsuit. The parties merely agreed to continue the case temporarily and to provide for Louisiana Gaming’s protection during the suit in order that Reliable could continue to operate in the interim. In fact, the agreement itself was dependent on Louisiana Gaming’s success in obtaining a permanent injunction. Therefore, the trial judge did not err in finding that the parties had entered into an enforceable contract which defined net profits as gross revenue less the state’s 22.5% and Byone’s 50% share.
Furthermore, had we found error on the part of the trial court it, would have had no effect on the resolution of this case. If we were to look solely at the March 15, 1993 letter agreement between the parties, we would reach the same conclusion as the trial court based on the following language:
... • We orally agreed that if Louisiana Gaming Corporation granted a continuance of the hearing, your client, together with Reliable Amusement Company, would agree that the operation’s one-half share of the video poker net revenue generated after October 7, 1992, would be paid to Louisiana Gaming Corporation if it was successful in obtaining the permanent injunction. This same Uagreement applies to the pending appeal, i.e. if your client loses its appeal, Louisiana Gaming Corporation will be paid the net revenue attributable to the operator after October 7, 1992, through the date of payment ...
(emphasis added)
The reference to the “operation’s one-half share” is telling when looked at in conjunction with the revenue reports provided by Reliable. In these reports the take from the machines is indicated as a gross intake less payouts to players giving a total net cash intake for the establishment. This amount is then distributed with 22.5% going to the state, and one half of the remainder going to the owner of the establishment and the remaining one-half share being designated as the operator’s share. Thus, the revenue reports generated by Reliable confirm the clear language of the contract.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant-appellant, Rehable Amusement Company, Inc.
AFFIRMED.